NESBITT, Senior Judge.
This is a contest between an Estate and the residual beneficiaries of a testamentary trust created under the decedent’s Last Will and Testament. The claim was made on behalf of the residual beneficiaries asserting that certain stocks owned by the decedent should have been distributed to his Estate, and the trust created therein, rather than to decedent’s wife, Adrienne.
The decedent died testate on November 19, 1994 and Letters of Administration were issued to wife, Adrienne, as personal representative, on January 9, 1995. The decedent was survived by his wife and two adult sons, John A. Salomon and Edward M. Salomon, III. The personal representative was discharged in September of 1997 when the Estate closed. Thereafter the personal representative, upon the discovery of certain unadministered assets, petitioned for Subsequent Administration. Letters of Administration were again issued on March 22,1999.
Under decedent’s will, a trust denominated the Credit Shelter Trust was created. The trust was to continue for the life of Adrienne. The trust provided that the income generated would be paid to Adrienne and that under certain circumstances, if needed, Adrienne would be permitted to invade the trust corpus. Upon her death, equal shares of the trust were to go to each of decedent’s sons, if they survived Adrienne. If either son did not survive her, his share was devised to John Salo-mon’s children. John A. Salomon died on January 16, 1996, prior to the Estate’s *1152 closing. Thereafter, Nancy, John’s wife, became aware of stocks that are in controversy. Nancy, representing her minor son as a residual beneficiary, along with her elder son, brought the instant action claiming that the stocks at issue should have been transferred to the Credit Shelter Trust. Their petition alleged that the Estate had been improperly closed without a petition for discharge containing a plan of distribution and without formal or informal notice having been given.[1]
An evidentiary hearing was conducted before the trial judge where the evidence established, inter alia, that the decedent was originally the uncontroverted owner of shares of Tiffany Furniture Industries, Inc. During decedent’s extremity, a meeting was called by the attorney for the Estate, and attended by the decedent’s accountant, Adrienne, and John and Edward, the adult sons. At that meeting, it was determined that it was in the best interest of all concerned that the stock in question should be treated as though it were owned jointly by the decedent and Adrienne. However, there was not an iota of evidence that the decedent concurred. No one held a durable power of attorney, and no one voiced decedent’s agreement. Consequently there was no donative intent shown. Thus, we easily conclude that such a transfer, constructive or otherwise, was of no efficacy whatsoever.
After the Estate had been administered to the point that distribution would be accomplished, the attorney for the Estate conducted another meeting, also attended by John, Edward, and Adrienne. At that meeting it was agreed that notwithstanding the fact that Adrienne listed the stock as an Estate asset, the stock should be treated as a joint asset of Adrienne and decedent. Thus, the personal representative showed an amended inventory reflecting that the stocks were not a part of the decedent’s Estate. Thereafter, son John died and the Estate was distributed ex-parte without notice to anyone other than the Florida Department of Revenue.
Because there was a distinct conflict of interest between Adrienne and the grandsons’ residual interests in the trust, we readily conclude that the amended inventory was a legal nullity under section 733.610 Florida Statutes (2000)[2]. Consequently on remand, we direct that Adrienne immediately refund the Estate, or transfer to the trust the stock or the comparable value thereof, as of the date of death. We expect it will come as a considerable surprise to the personal representative to learn of her conflict of interest. However benign, and notwithstanding the belief that the acts at issue were in the Estate’s best interest, the personal representative breached her fiduciary duty.
Should she fail to comply, on the going down of the mandate, the court will either *1153 be required to remove her and appoint an administrator ad litem, or in the alternative, appoint an attorney ad litem to compel her obedience to what is now a judgment and the law of the case. Any future costs and expenses incurred as a result of her failure to so act, including the attorney’s fees and costs of this appeal, as well as future action in the court below, must be imposed against her pursuant to section 733.609 Florida Statutes (2000).[3]
Reversed and remanded with directions.

. The allegations of the petition were sufficient to have warranted the revocation of probate even if the Estate has not already been reopened. See § 733.109, Fla. Stat.(2000); Fla. Prob. R. 5.270.

. Section 733.610, Florida Statutes (2000) provides:
Any sale or encumbrance to the personal representative or his or her spouse, agent, or attorney, or any corporation or trust in which the personal representative has a substantial beneficial interest, or any transaction that is affected by a conflict of interest on the part of the personal representative, is voidable by any interested person except one who has consented after fair disclosure, unless:
(1) The will or a contract entered into by the decedent expressly authorized the transaction; or
(2) The transaction is approved by the court after notice to interested persons.

. Section 733.609, Florida Statutes (2000) provides:
If the exercise of power concerning the estate is improper or in bad faith, the personal representative is liable to interested persons for damage or loss resulting from a breach of his or her fiduciary duty to the same extent as a trustee of an express trust. In all actions challenging the proper exercise of a personal representative's powers, the court shall award taxable costs as in chancery actions, including attorney's fees.